# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DOROTHY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:20-cv-00889-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Dorothy Williams ("Williams") seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income ("SSI"), a period of disability, and disability insurance benefits ("DIB"). (Doc. 1). Williams timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Williams protectively filed applications for SSI, a period of disability, and DIB on June 19, 2017, alleging disability beginning on December 31, 2011. (Tr. 18, 230-42). The Commissioner initially denied Williams's claim (tr. 140-50), and Williams requested a hearing before an ALJ (tr. 166-67). After a July 17, 2019 hearing—at which Williams amended her onset date to September

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

18, 2016 (tr. 18, 38)—the ALJ denied Williams's claim on August 2, 2019. (Tr. 15-32). Williams sought review by the Appeals Council, but it denied her request for review on May 29, 2020. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On June 23, 2020, Williams initiated this action. (Doc. 1).

Williams was forty-six years old on the date the ALJ rendered his decision. (Tr. 26-27). Williams has a tenth-grade education and past relevant work as a meat trimmer, sewing machine operator/garment inspector, and housekeeper. (Tr. 26).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Williams had not engaged in substantial gainful activity since September 18, 2016, her amended alleged onset date. (Tr. 20). At Step Two, the ALJ found Williams has the following severe impairments: type III dens fracture of the cervical spine, status post reduction and fusion; status post L1 compression deformity; and degenerative changes of the cervical, thoracic, and lumbar spine. (Tr. 20). At Step Three, the ALJ found Williams does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to Step Four, the ALJ determined Williams's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Williams has the RFC

>to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) with frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and occasional overhead reaching bilaterally.  She must avoid concentrated exposure to vibrations; and she must avoid even moderate exposure to hazards, such as open flames, unprotected heights, and dangerous moving machinery.

(Tr. 22).  At Step Four, the ALJ determined Williams was capable of performing her past relevant work as a housekeeper. (Tr. 26).  In the alternative, the ALJ determined, based on Williams's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Williams could perform. (Tr. 26).  Therefore, the ALJ determined Williams has not been under a disability and denied her claim. (Tr. 27).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Williams raises three objections to the denial of SSI: (1) the ALJ failed to accord appropriate weight to the opinion of treating physician Dr. Larry Scarborough (doc. 15 at 23-28); (2) the Appeals Council erred by failing to adequately consider records she submitted on appeal, wrongly finding they did not show a reasonable probability that it would have changed the outcome of the decision (*id.* at 29-39); and (3) that the denial was not supported by substantial evidence when the evidence submitted to the Appeals Council is considered (*id.* at 39-40).

**A. The ALJ Did Not Err in Considering Dr. Scarborough's Opinion**

**1. The ALJ Applied the Appropriate Legal Standard**

As the Commissioner notes at length (doc. 16 at 7-15), Williams relies on law that predates the most recent regulatory framework an ALJ applies to evaluate opinion evidence. Specifically, Williams argues the "treating physician rule" applies here. (Doc. 15 at 23-24). This rule was part of the regulatory framework applicable to applications filed before March 27, 2017. Under those regulations (and Eleventh Circuit caselaw interpreting them) a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), in turn citing 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted). However, for claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account the following five factors:

   (1) Supportability
   (2) Consistency
   (3) Relationship with the claimant (which includes)
         (i) Length of the treatment relationship
         (ii) Frequency of examinations
         (iii) Purpose of the treatment relationship
         (iv) Extent of the treatment relationship
         (v) Examining relationship
   (4) Specialization
   (5) Other factors

20 C.F.R. § 404.1520c(c). The ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors. 20 C.F.R. § 416.920c(b)(2).

While the Eleventh Circuit has not weighed in on the applicability of the treating physician rule in a published decision, another district court recently summed up its state:

> [W]hether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question. *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). The Eleventh Circuit has not spoken on the issue. *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104, n.4 (11th Cir. Aug. 12, 2021) ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). And district courts have diverged in their approaches. *See Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was a non-issue -- under both standards, ALJ's opinion was substantially supported); *Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid); *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies); *Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them).

*Simon v. Acting Comm'r of the Soc. Sec. Admin.*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *4 (M.D. Fla. Sept. 17, 2021). And in a more recent unpublished decision, the Eleventh Circuit assumed the new regulations supplanted the treating physician rule. *Matos v. Comm'r of Soc. Sec.*,

7

No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."). *See also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. Jan. 27, 2021) (noting without comment that "[f]or claims filed on or after March 27, 2017 . . . no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources.").

Rather than provide any argument in his brief or reply as to why the treating physician rule is still appropriate, Williams simply assumes its applicability—despite explicitly acknowledging that "SSA Rule 404.1520c. eliminated the 'Treating Physician rule.'" (doc. 15 at 26-28). It is only in a supplemental brief that Williams makes the argument the treating physician rule should apply notwithstanding the regulatory change, relying heavily on the Eleventh Circuit's decision in *Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908 (11th Cir. 2021). (Doc. 19). There are multiple problems with Williams' argument that *Simon* controls the outcome here. Most importantly, the opinion Williams cites was withdrawn, and a different opinion substituted after rehearing. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1097 (11th Cir. 2021) ("The opinion previously issued as 1 F.4th 908 (11th Cir. 2021), is withdrawn and the following opinion is issued in its stead."). While the portion of the withdrawn opinion Williams cites indicates the treating physician rule is similar to the new regulations, the substituted opinion specifically disclaims any need to consider the impact of the new regulations on the treating physician rule because the plaintiff's claim was decided under the old regulations.[4] *Simon*, 7 F.4th at 1104 n.4 ("Because Simon filed his claim in

---

[4] In a recent decision, the Second Circuit took the same tack—acknowledging the regulatory change, but declining to address how it impacted the treating physician rule in the

March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). To the extent Williams argues the withdrawn opinion is controlling or even informative, he is mistaken; it is a nullity.

The remainder of the cases Williams cites are also inapplicable, either because they were decided under the prior regulations (citing the substituted *Simon* decision only for the previously applicable legal standard), or because the court did not decide one way or the other which regulations applied. Of particular note, Williams points to *Mayfield v. Comissioner, Soc. Sec. Administrtaion*, No. 7:20-CV-01040-ACA, 2021 WL 5300925 (N.D. Ala. Nov. 15, 2021) and *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501-JHE, 2021 WL 4409092 (N.D. Ala. Sept. 27, 2021), both cases from this district. (Doc. 17 at 2-5), In *Mayfield*, Judge Axon found remand was required whether the new regulations or precedent pre-dating those regulations was applied. 2021 WL 5300925 at *5. And in *Humber*, the undersigned included a footnote observing that it was unnecessary to decide whether the treating physician rule still applied in this circuit. 2021 WL 4409092 at *6, n.10. The issue in that case was that the ALJ had failed to articulate *at all* how he considered an opinion in the record, preventing meaningful court review—not that the ALJ failed to provide appropriate weight to the treating physician's opinion. *Id.* at *6. Neither of these cases persuade the undersigned that adhering to the treating physician rule is still required in the face of regulations conspicuously omitting that standard.

---

context of a case decided under the old regulations. *Colgan v. Kijakazi*, 22 F.4th 353, 360 n.2 (2d Cir. 2022).

9

Although the Eleventh Circuit has not specifically said in a published decision that the new regulations displace the previous case law about the treating physician rule, the regulations as written do not support continue use of the rule. This interpretation is supported by the Eleventh Circuit's unpublished opinions, which assume the new regulations supplanted the treating physician rule. In the absence of any argument from Williams that the regulations are invalid or that the treating physician rule must be applied under the new regulations, the undersigned finds the ALJ needed to do no more than consider the opinion evidence as required by the regulations applicable to Williams' claim.

**2. The ALJ Did Not Err in Finding Dr. Scarborough's Opinion Unpersuasive**

Turning to specifics, Williams disputes the ALJ appropriately considered a one-page Physical Capacities Form signed by Dr. Scarborough on June 24, 2019. (Doc. 15 at 23-24). On that form, Dr. Scarborough stated Williams suffered limitations due to "MVA & broken neck, back injury, leg injury with chronic pain, [and] preexisting carpal tunnel syndrome." (Tr. 525). He checked boxes indicating Williams could: occasionally lift up to 10 pounds and never lift anything more; occasionally reach, handle, and finger, but never feel, with her left hand; and occasionally reach, handle, finger, and feel with her right hand. (*Id.*). Dr. Scarborough indicated Williams would be off-task 50% of an 8-hour day and would fail to report to work 15 days in a 30-day period due to her physical symptoms. (*Id.*). Dr. Scarborough stated Williams could sit upright in a chair for 30 minutes at a time and could stand for 15 minutes at a time, and would be expected to lie down, sleep, or sit with propped legs for 4 hours of an 8-hour day. (*Id.*). He checked a box indicating Williams' limitations existed back to September 18, 2016. (*Id.*). Finally, Dr. Scarborough listed "potential for drowsiness" as a side effect of Williams' medication. (*Id.*).

The ALJ found Dr. Scarborough's opinion to be unpersuasive. (Tr. 25). He stated:

> [The opinion] is poorly supported, in that [Dr. Scarborough] merely listed conditions to explain the limitations opined, one of which, "leg injury with chronic pain," is unsupported by the evidence, as discussed above. His opinion is also inconsistent with other evidence in the record, including his own treating notes, which indicate he has seen the claimant only four times since she established care on January 24, 2019, prescribing only conservative treatment, and which contain no findings to support the degree of limitation he provided. Indeed, he repeatedly stated her sensory and grip were okay, which is inconsistent with the manipulative limitations he opined, and there is no indication that he instructed the claimant to elevate her legs when sitting or that the claimant reported lying down or sleeping half the day. (Though she stated that baclofen made her "wobbly," she did not complain of side effects from her other medications). She reported her medications help and fairly control her pain, which is inconsistent with the need for her to be off-task and miss work 50% of the time.

(*Id.*).

Apart from her reliance on the treating physician rule, Williams only states that Dr. Scarborough's opinion "is well supported by clinical and laboratory findings, and not inconsistent with other substantial evidence." (Doc. 15 at 25). Williams points to no record evidence consistent with this characterization and makes no specific argument. On the contrary, the ALJ's reasons for finding Dr. Scarborough's opinion unpersuasive are consistent with the record.

On January 24, 2019, Williams presented with neck pain dating from two years prior but worsening in the previous month to the point where she could not sleep. (Tr. 526). Williams reported a history of spinal surgery, an accident where she was thrown from a car causing cervical fractures at C1 and C2 (for which she wore a halo and had surgery), and rheumatoid arthritis with chronic right knee pain. (*Id.*). Consistent with the ALJ's characterization, Dr. Scarborough found "Grip and sensory OK in hands" at this visit. (Tr. 531). Dr. Scarborough instructed Williams to continue taking her medications—baclofen and gabapentin (tr. 529)—and referred her to radiology for an X-ray of her cervical spine. (Tr. 532).

11

On February 8, 2019, Williams returned for a follow-up. (Tr. 534). Williams reported increased soreness and that her right hand got numb sometimes which caused her to drop things, but that baclofen and gabapentin had helped some. (*Id.*). Dr. Scarborough discussed the X-ray, which showed fusion at C1 and C2 and facet arthropathy. (*Id.*). Dr. Scarborough prescribed amitriptyline to help Williams sleep. (Tr. 534, 536). Although Williams had decreased range of motion in her cervical spine on examination, Dr. Williams again stated "Grip symmetrical, sensory intact." (Tr. 538). Dr. Scarborough ordered labs and indicated Williams should continue taking her medications. (Tr. 539).

On March 18, 2019, Williams returned to Dr. Scarborough with elbow pain and cervicalgia. (Tr. 541). Williams reported her cervical pain was chronic but fairly controlled. (*Id.*). Baclofen made her "wobbly" but helped the pain when she could take it, while gabapentin also helped the pain. (*Id.*). Williams reported sleeping better with the amitriptyline. (*Id.*). Dr. Scarborough found right elbow tenderness, but found "Sensory and grip" continued to be "OK." (Tr. 545). Dr. Scarborough renewed Williams' prescriptions for baclofen and amitriptyline and instructed her to take her medications, report any continued problems, and follow up for lab results. (Tr. 543, 545).

Williams' final visit to Dr. Scarborough in the record was on June 24, 2019. (Tr. 548). At that visit, Williams reported continued pain and limited motion in her neck, but that gabapentin and baclofen helped. (*Id.*). Williams reported back pain, severe neck pain, moderate bilateral hand pain, and moderate knee aches. (Tr. 551). Dr. Scarborough did not report anything about Williams' grip or hands on his examination. (Tr. 552). Dr. Scarborough continued Williams on the same medications she had been taking and directed her to schedule a follow-up visit in three months. (Tr. 553).

As the ALJ found, numerous elements of Dr. Scarborough's opinion lack any foundation in the notes from his relatively brief, four-visit treatment history with Williams. Dr. Scarborough imposed multiple manipulation limitations, the most severe of which related to Williams' left hand. (Tr. 525). However, Dr. Scarborough's treatment notes reflect Williams had normal grip strength and sensation in both hands, and the only specifically hand-related manipulative problem Williams reported was occasionally dropping things with her *right* hand (tr. 534). It is unclear how Dr. Scarborough derived his assessments Williams would be off-task during half of an 8-hour day and fail to report to work 15 out of 30 days, but the findings in his notes and decision to treat Williams by continuing to prescribe medications Williams herself reported fairly controlled her pain do not bear these out. The ALJ's assessment of the persuasiveness of Dr. Scarborough's opinion was thus supported by substantial evidence.

### B. The Appeals Council Appropriately Considered Williams' Submission

Williams' second argument relates to how the Appeals Council considered evidence related to an evaluation by Dr. Jarrod Warren. (Tr. 556-58). "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously previous presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the

13

new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is material when, "if accepted there is a reasonable possibility that [it] would change the administrative result." *Washington*, 806 F.3d at 1321 (citation and internal quotation marks omitted). And evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

Dr. Warren evaluated Williams on December 5, 2019. (Tr. 556). He found Williams had a severely reduced range of motion in her neck, with whole body movements required to look in different directions. (Tr. 557). He also found some moderately reduced movement in Williams' back as well as joint pain in her knees. (Tr. 558). Dr. Warren found Williams suffered from chronic neck pain with prior C2 fracture and severely reduced range of motion, chronic lower back pain with prior L1 compression fracture, chronic headaches, carpal tunnel syndrome bilaterial, and generalized osteoarthritis. (*Id.*). He opined Williams' neck pain and stiffness caused additional limitations in mobility and persistent pain with the rest of her body. (*Id.*). Finally, he stated Williams would likely benefit from repeat imaging, pain management, and physical therapy. (*Id.*).

The Appeals Council did not exhibit Dr. Warren's opinion, finding it did not show a reasonable probability that it would change the administrative outcome. (Tr. 2). In other words, it reviewed the evidence and found it was not material. It is unclear how Williams believes this is erroneous since she makes no specific argument as to its materiality. While Williams states Dr. Warren's examination "confirms that Claimant had limitations which precluded gainful

14

employment," (doc. 15 at 29), Dr. Warren's report provides diagnoses which echo evidence already in the record—particularly Dr. Scarborough's notes, which also indicate Williams has decreased cervical range of motion, back pain, and arthritis. (*See, e.g.,* tr. 531). Absent any specific argument or apparent reason why the Appeals Council's decision was incorrect, the undersigned finds the Appeals Council did not err in its consideration of Dr. Warren's opinion.

### C. The ALJ Did Not Err in Relying on Vocational Examiner Testimony

Williams' final argument is that the ALJ's denial of her claim was not based on substantial evidence, both because Dr. Warren's evaluation undermines it and because the ALJ erroneously relied on testimony from a vocational examiner ("VE"). (Doc. 15 at 39-41). As stated above, Williams provides no reason why Dr. Warren's evaluation is material in light of the other evidence in the record, and thus her argument is a non-starter. Thus, the analysis below considers only the portion that relates to VE testimony.

In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Here, the ALJ asked:

> Let me have you assume, then, that we have a hypothetical person the same age, education, and work experience as Ms. Williams who can perform light work with frequent climbing of ramps and stairs, and occasional climbing of ladders, ropes, and scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; occasional overhead reaching bilaterally. She must avoid concentrated exposure to vibrations. And she must avoid even moderate exposure to hazards such as open flames, unprotected heights, and dangerous moving machinery.

(Tr. 58). The VE responded with a number of jobs such a person could perform, and the ALJ incorporated this into his decision. (Tr. 26, 58-59).

Williams argues the hypothetical did not fully include her impairments and limitations. (Doc. 15 at 40-41). Apart from recounting the history of her automobile accident, Williams never actually states what impairments or limitations ought to have been included or points to any record evidence to substantiate such impairments. Williams simply disagrees with the RFC. Accordingly, Williams has not pointed to any error warranting reversal.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Williams's claim for supplemental security income, a period of disability, and disability insurance benefits is **AFFIRMED**.

DONE this 14th day of March, 2022.

 _____
 **JOHN H. ENGLAND, III**
 UNITED STATES MAGISTRATE JUDGE